IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-413-D
No. 5:25-CV-51-D

| | | |
|---|---|---|
| COREY RAMON BEST, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On January 28, 2025, Corey Ramon Best ("Best" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 210-month sentence [D.E. 206]. On February 6, 2025, Best filed a duplicate section 2255 motion [D.E. 207].[1] On May 11, 2026, the United States moved to dismiss Best's section 2255 motions [D.E. 226] and filed a supporting memorandum [D.E. 227]. See Fed. R. Civ. P. 12(b)(6). The same day, the court notified Best of the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 228]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Best did not respond to the United States' motion to dismiss. As explained below, the court grants the United States' motion to dismiss and dismisses Best's section 2255 motions.

I.

In 2018, the Drug Enforcement Administration partnered with federal, state, and local law enforcement to investigate a drug trafficking organization ("DTO") linked to a Mexican cartel

[1] Best's motions are substantively identical. The court references docket entry 206 when discussing Best's section 2255 motion.

operating in the Eastern District of North Carolina. See Presentence Investigation Report ("PSR") [D.E. 124] ¶ 25. Authorities identified Angel Castrejon ("Castrejon") as the leader of the DTO. See id.

Through surveillance on Castrejon, authorities identified Best as a co-conspirator in the DTO. See id. at ¶ 28. During the investigation, authorities repeatedly intercepted Best on numerous calls. See id. at ¶ 26.

On June 24, 2019, the authorities wiretapped Best's phone and determined he purchased one kilogram of cocaine at a time from the DTO to distribute in this district. See id. On July 1, 2019, law enforcement began surveilling Best's residence. See id. at ¶ 29. Agents repeatedly observed Best traveling to meet individuals who had been identified as conspirators within the DTO. See id.

On October 22, 2019, a confidential source ("CS") told authorities that Best was buying drugs from David Vasquez ("Vasquez"), another leader in the DTO. See id. at ¶ 30. The CS also told authorities that Best worked for Castrejon and had worked with Vasquez for eight years. See id. The CS told authorities that Best operated a stash house near Faison, North Carolina and sometimes transported cocaine from California to North Carolina for Vasquez. See id.

On December 1, 2019, authorities conducted a traffic stop on Best and Allen King Coley. See id. at ¶ 31. During the traffic stop, Best attempted to flee from officers and refused to obey commands. See id. When an officer attempted to take Best into custody, Best struck the officer twice in the chest before being detained. See id. Officers recovered $417 in U.S. currency and one gram of marijuana from Best and found one kilogram of cocaine in Best's car. See id. Later that day, Best provided an unprotected statement to law enforcement admitting to distributing

cocaine. See id. On December 4, 2019, during another unprotected statement, Best detailed his criminal relationship with Vasquez. See id. at ¶ 32.

On June 10, 2021, the United States charged Best by criminal information with conspiracy to distribute and possession with intent to distribute five kilograms of more of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, and for knowingly possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 [D.E. 88]. On June 17, 2021, with a plea agreement, Best pleaded guilty to both charges. See PSR ¶ 6; [D.E. 92].

On May 4, 2022, the court sentenced Best to 210 months' imprisonment on each count to run concurrently [D.E. 171, 180]. On May 17, 2022, Best appealed [D.E. 173]. On October 25, 2023, the United States Court of Appeals for the Fourth Circuit affirmed Best's conviction, enforced the appellate waiver in Best's plea agreement, and dismissed his appeal. See United States v. Best, No. 22-4295, 2023 WL 7015679, at *1 (4th Cir. Oct. 25, 2023) (per curiam) (unpublished); [D.E. 200].

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."

Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Best must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted). "An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or earlier hearings], and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (quotation omitted). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second guess counsel's assistance after conviction or an adverse sentence. The question is whether an attorney's representation amounted to incompetence under the prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (quotation and citations omitted).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 468 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional prejudice requirement" on the "conclusion that 'an error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions more likely than not altered the outcome; but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest cases.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (citation omitted). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369. "Judges instead should look to the contemporaneous evidence to substantiate a defendant's expressed preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58. "Every inroad on the concept of

finality undermines confidence in the integrity of our procedures; and by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (quotation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (quotation omitted).

III.

A.

Best's section 2255 motions are untimely. Section 2255 "imposes tight procedural constraints." Fernandez v. United States, 608 U.S. 411, 419 (2026). Section 2255(f) contains a one-year statute of limitations. See 28 U.S.C. § 2255(f). Section 2255(f) provides that the one-year clock is triggered by one of four conditions, whichever occurs last:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2255(f)(1)–(4); see Fernandez, 608 U.S. at 419; Johnson v. United States, 544 U.S. 295, 299–300 (2005); United States v. Green, 67 F.4th 657, 663 (4th Cir. 2023); Whiteside v. United States, 775 F.3d 180, 182–83 (4th Cir. 2014) (en banc). Under section 2255(f)(1), after an unsuccessful appeal, a "judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." Clay v. United States, 537 U.S. 522, 525 (2003); see United States v. Brown, 868 F.3d 297, 301 (4th Cir. 2017). Best's judgment of conviction became final no later than January 23, 2024, or 90 days after the Fourth Circuit entered judgment dismissing Best's appeal on October 25, 2023. See Sup. Ct. R. 13(1); Clay, 537 U.S. at 525. Thus, Best had to file a section 2255 motion by January 23, 2025.

Best mailed one copy of his section 2255 motion to the court. Under the prison mailbox rule, a prisoner's filing is considered received by the court on the date it enters the prison mailroom, not when the clerk of court actually receives the motion. See Houston v. Lack, 487 U.S. 266, 275–76 (1988); United States v. Moore, 24 F.3d 624, 625 (4th Cir. 1994); Rule Governing Section 2255 Proceedings for the United States District Court 3(d). On January 24, 2025, Best placed his motion in the prison mailroom, which is after the statute of limitations expired. See [D.E. 207-1] 9. Best also sent a copy of his motion to the court through a family member. See [D.E. 207-2] 1. A family member's filing is not subject to the prison mailbox rule because the prisoner does not use the prison's mailing system; therefore, the court considers filing as of the date the court receives the filing. On January 28, 2025, the court received this copy of Best's 2255 motion, which is also after the statute of limitations expired. See [D.E. 206-3] 1. Thus, Best's section 2255 motions were not timely.

The court told Best about the one-year statute of limitations at his Rule 11 hearing. See Rule 11 Tr. [D.E. 192] 8, 15. Moreover, the section 2255 form states: "If your judgment of conviction became final over one year ago, you must explain why the statute of limitations . . . does not bar your motion." [D.E. 206] 12. Best left this section blank and made no argument about the statute of limitations. See id.; [D.E. 206-2]. Best has not plausibly alleged that the statute of limitations was subject to equitable tolling, and the court grants the United States' motion to dismiss as untimely Best's section 2255 motions.

B.

Alternatively, even if Best's section 2255 motions were timely, Best's claims fail on the merits. Best alleges his defense counsel provided ineffective assistance of counsel by (1) conducting off-record guilty plea negotiations and misrepresenting information to Best about

sentencing and his waiver of rights, and (2) failing to object to the government's failure to request a downward variance below the mandatory minimum sentence despite an off-record promise to do so. See [D.E. 206] 4–5. Liberally construed, Best also alleges his guilty plea was not knowing and voluntary. See id.

1.

Best argues that defense counsel acted deficiently when he told Best that the United States made an off-record plea offer promising to recommend a downward variance of 20% below the mandatory minimum sentence at Best's sentencing hearing in exchange for Best's guilty plea and cooperation. See [D.E. 206-2] 2. Defense counsel allegedly advised Best that this plea deal "would be his only opportunity to avoid a harsh sentence of 20 to 25 years." Id.; see [D.E. 206-1] 1. According to Best, defense counsel "assured [Best] that [his] cooperation would result in a" sentence reduction. [D.E. 206-2] 3. Best contends that defense counsel misrepresented the enforceability of the United States' alleged off-record plea offer because "no such agreement existed." Id. at 6; see [D.E. 206-1] 1.

Best has not plausibly alleged defense counsel's deficient performance. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Courts must enforce plea agreements even when they "later prove less advantageous than the government had anticipated." United States v. Edgell, 914 F.3d 281, 289 (4th Cir. 2019). Such promises, however, must only be fulfilled when they are part of the plea agreement. See id. at 288; United States v. Tate, 845 F.3d 571, 575 (4th Cir. 2017). "[I]n enforcing plea agreements, the government is held only to those promises that it actually made to the

defendant." United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994). The government is not "obligated to provide more than is specified in the agreement itself." Id.

Best has not plausibly alleged that the government promised to move for a 20% downward variance as part of Best's plea agreement. Best's written plea agreement contained the "full and complete record" of the agreement "unless otherwise modified in writing." [D.E. 92] 1. The plea agreement does not contain a stipulation that the government would move for a downward variance at sentencing, much less a downward variance 20% below the mandatory minimum. See id. The agreement did, however, reserve the right of the United States to make a sentencing recommendation to the court. See id. at 7. At Best's Rule 11 hearing, the court informed Best that "any stipulations in [his] plea agreement are not binding on the court." Rule 11 Tr. [D.E. 192] 4–5. The court also told Best that "any calculation by your attorney or anyone else about [ ] your sentence . . . is only an estimate and is not binding on the [c]ourt." Id. at 19. The court also told Best that even by accepting the guilty plea, the court could still sentence Best to the maximum sentence, and such a sentence would not be a basis to withdraw the plea. See id. Best confirmed he understood these facts. See id. Best also told the court that he had received no promises or assurances not contained in the plea agreement in exchange for his guilty plea. See id. at 23.

Best's sworn statements bind him. See, e.g., Blackledge, 431 U.S. at 74–75; United States v. Yelizarov, 140 F.4th 597, 605 (4th Cir. 2025) ("Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy."), cert. denied, 146 S. Ct. 345 (2025); United States v. Moussaoui, 591 F.3d 263, 295–99 (4th Cir. 2010); United States v. Lemaster, 403 F.3d 216, 219–22 (4th Cir. 2005). Best's answers at his Rule 11 plea colloquy show that he understood the plea agreement and that the plea agreement contained no promise about the government moving for a variance. Thus, Best has not

plausibly alleged that the United States breached the plea agreement, or the defense counsel misrepresented the plea agreement.

As for defense counsel's recommendation that cooperation would be the only way to avoid a harsh sentence, defense counsel's advice was based on "insights borne of past dealings" with the prosecutor and the court. Premo v. Moore, 562 U.S. 115, 125 (2011); see Strickland, 466 U.S. at 691; United States v. Flood, 188 F.4th 250, 262 (4th Cir. 2026). Furthermore, defense counsel was correct. Best's cooperation led the United States to recommend a sentence 32 months below what it would have recommended absent Best's cooperation. See Sent. Tr. [D.E. 195] 6–7.

Alternatively, Best has not plausibly alleged prejudice from his defense counsel's advice about the plea agreement. Best claims that he would have proceeded to trial and maintained his innocence had he known the government would not move for a 20% downward variance. See [D.E. 206-2] 7. Best's contention is entirely speculative.

Even if defense counsel misrepresented the enforceability of the United States' alleged promise to seek a variance (and counsel did not), any deficiency was "corrected by the trial court at the Rule 11 hearing." United States v. Mayhew, 995 F.3d 171, 179–80 (4th Cir. 2021). At the Rule 11 hearing, the court told Best that any sentence estimation would not bind the court, confirmed that the written plea agreement contained Best's whole agreement with the United States, and confirmed Best was not pleading guilty because of any promises outside the plea agreement. See Rule 11 Tr. 5, 18–20, 23. Best's sworn statements bind him. See, e.g., Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 219–22.

Best also alleges no "credible contemporaneous evidence" that but-for defense counsel's advice, he would have insisted on going to trial or that a decision to go to trial would have been

rational. Id.; see Lee, 582 U.S. at 364–65, 369; Hill, 474 U.S. at 59. At his Rule 11 hearing, Best specifically confirmed to the court that he was not pleading guilty in exchange for any off-record promises and that the plea agreement contained the entire agreement. See Rule 11 Tr. 20, 23. The plea agreement does not contain the United States' alleged promise to seek a variance. See [D.E. 92]. The United States also believed it had a strong case even without Best's cooperation. See Sent. Tr. at 13–14. Best does not allege that he informed counsel he would go to trial if the government had not promised to seek a variance, and the court does not accept Best's post hoc rationalizations. See, e.g., Lee, 582 U.S. at 364–65, 369; Yelizarov, 140 F.4th at 605. Thus, Best's first claim fails.

2.

Best argues that his defense counsel acted deficiently by not objecting to the United States' failure to recommend a sentence 20% below the mandatory minimum sentence. See [D.E. 206-2] 7. Best also argues that his counsel performed deficiently by not accusing the United States of acting in bad faith by refusing to file a section 5K1.1 motion to fulfill its alleged off-record promise. See id.

Best fails to plausibly allege deficient performance. The United States filed a section 5K1.1 motion, and the court granted it. See Sent. Tr. 4–10. Moreover, defense counsel did object to the United States' sentencing recommendation and argued that Best's cooperation warranted a greater reduction. See id. at 5–11. Defense counsel urged the court to give Best a sentence that was "proportional" to his conduct and cooperation. See id. at 20.

The court was aware that the United States requested a 230-month sentence based on Best's cooperation. See id. at 6–7. Although Best may not have liked the government's recommendation, the government fulfilled its obligations under the plea agreement. As Best's defense counsel

conceded at the sentencing hearing, "the [g]overnment is entitled to their position." Id. at 11; [D.E. 92] 7. Thus, Best fails to plausibly allege deficient performance.

Alternatively, Best has not plausibly alleged prejudice. Best argues that his defense counsel's deficient performance caused his 210-sentence because there was "no consideration of mitigating factors such as [Best's] cooperation or medical history." [D.E. 206-2] 4. Best also contends that he would have maintained his innocence and gone to trial if he had known the government would not fulfill its promise to move for a downward variance. See id. at 8.

As for mitigating factors, the court considered the section 3553(a) factors, including Best's cooperation and medical issues. See Sent Tr. 20–26. The court also granted the government's 5K1.1 motion, acknowledged Best's cooperation, and gave Best "more credit [for substantial assistance] than the [g]overnment suggests." Id. at 23. Defense counsel informed the court that Best had "some medical conditions based on prior injuries" and mental health problems, and asked for imprisonment at a facility that could help Best with those issues. Id. at 20. In pronouncing Best's sentence, the court recommended a medical evaluation and treatment, and a mental health evaluation and treatment. See id. at 27. Moreover, the court acknowledged the 210-month sentence was different from what either party requested and this was the appropriate sentence for Best under the section 3553(a) sentencing factors. See id. at 28. Best has not plausibly alleged prejudice.

As for Best's contention that he would have gone to trial, Best alleges no "credible contemporaneous evidence" that but-for defense counsel's failure to adequately object to the United States' sentencing recommendation, he would have insisted on going to trial or that a decision to go to trial would have been rational. Yelizarov, 140 F.4th at 605; see Lee, 582 U.S. at 364–65, 369; Hill, 474 U.S. at 59. At his Rule 11 hearing, Best specifically confirmed to the court

that he was not pleading guilty in exchange for any off-record promises and that the plea agreement contained the entire agreement. See Rule 11 Tr. 20, 23. The court informed Best at his Rule 11 hearing that any estimation he received about his sentence was not binding on the court. See id. at 19. Best does not allege that he informed counsel he would go to trial if the government had not promised to seek a 20% downward variance, and the court need not accept his post hoc rationalizations. See, e.g., Lee, 582 U.S. at 364–65, 369; Yelizarov, 140 F.4th at 605.

3.

Best argues that he informed defense counsel "from the outset" that he was "'innocent of the assault charge and that he did not attempt to flee the scene." [D.E. 206-2] 2. Best alleges that there was video evidence of the incident, but his lawyer repeatedly falsely told him that evidence did not exist so it would be Best's word against the officer's. See id. at 3, 6. Then, according to Best, "[a]t the last minute, [Best] learned that the prosecution had a video of the alleged incident, but this video was never reviewed with him by counsel." Id. at 3. According to Best, defense counsel told him that challenging the video evidence would be futile and that any challenge to the assault charge could only be brought after sentencing, and thus allegedly misled Best into believing a plea deal was the only to avoid a mandatory minimum sentence. See id.

Best was not charged with assaulting an officer. The assault conduct was used for a sentence enhancement. See PSR ¶ 87; U.S.S.G. § 3A1.2(c)(1). Best essentially argues actual innocence of the assault. See Bousley v. United States, 523 U.S. 614, 623 (1988). Actual innocence, however, applies only to challenges to a defendant's conviction, not his sentence. See United States v. Jones, 758 F.3d 579, 586 (4th Cir. 2014). Because Best was not charged with assault and his conduct against the officer was considered only for sentencing, his innocence claim fails.

At sentencing, the court properly considered the evidence of Best's alleged assault on a law enforcement officer during his arrest. Before the sentencing hearing, Best objected to portion of the PSR alleging he assaulted a law enforcement officer. See PSR Addend. 1. At the sentencing hearing, defense counsel challenged the factual basis for the assault and argued that Best's conduct was more akin to misdemeanor resisting arrest. See Sent. Tr. at 19. The court considered defense counsel's argument but found that Best's conduct with the officer warranted the assault enhancement. See id. at 23. At a sentencing hearing, the court can "give weight to any relevant information before it" with "sufficient indicia of reliability." United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010). The court found the evidence of the contents of the video credible, and Best's claim fails.

Alternatively, Best has not plausibly alleged prejudice. The video showed that Best assaulted an officer while resisting arrest on a heavily traveled highway. See Sent Tr. 14–15; PSR ¶ 8; PSR Addend. 1–2.

Best alleges no credible contemporaneous evidence that but-for defense counsel's advice about the assault sentence enhancement, he would have insisted on going to trial and maintained his innocence. See Lee, 582 U.S. at 364–65, 369; Hill, 474 U.S. at 59; Yelizarov, 40 F.4th at 605. Thus, Best fails to plausibly allege prejudice, and the claim fails.

4.

Best contends that his lawyer misrepresented the "terms of the plea agreement and sentencing expectations." Id. at 6. Construed liberally, these allegations are an argument that Best's guilty plea was not knowing and voluntary.

Best does not allege specifically how defense counsel misrepresented the plea agreement terms or sentencing expectations. Thus, Best fails to plausibly allege deficient performance. See

Iqbal, 556 U.S. at 677–79; Flood, 188 F.4th at 262; Giarratano, 521 F.3d at 302. To the extent these alleged misrepresentations refer to the United States' alleged promise to seek a variance, the court rejects Best's argument for the reasons discussed.

At the Rule 11 hearing, the court reviewed the charges and penalties and confirmed Best understood those charges and penalties. See Rule 11 Tr. 17–18. The court then explained the sentencing process to Best, who confirmed he understood. See id. at 19–20. The court confirmed Best had reviewed with counsel and understood all the terms of his plea agreement and that the agreement constituted the entire agreement with the United States. See id. at 20. The court informed Best of the consequences of pleading guilty, including the constitutional rights he would be giving up by doing so. See id. at 8–9, 22–23. When the court asked Best if anyone had made any "promises or assurances in order to get [Best] to plead guilty," and Best answered that no such promises or assurances had been made. See id. at 23. The United States then provided a factual basis for the plea. See id. at 23–26. Best then pleaded guilty to counts one and two of his information. See id. at 27. At his Rule 11 hearing, no parties raised concerns about Best's competency. See id. at 15–16.

Best's sworn statements bind him and show that he understood the charges and penalties, the potential consequences of pleading guilty, and that the court would make the final sentencing determination after considering the parties' arguments. See, e.g., Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 219–22. Thus, the record shows Best's guilty plea was knowing and voluntary.

After reviewing the claims presented in Best's motion, the court finds that reasonable jurists would not find the treatment of Best's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of

appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 226], DISMISSES petitioner's motions to vacate, set aside, or correct his sentence [D.E. 206, 207], and DENIES a certificate of appealability.

SO ORDERED. This 4 day of November, 2026.

JAMES C. DEVER III
United States District Judge